**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

Civil Action Number:

ANDRES GOMEZ,

     Plaintiff,

vs.

MOUNT SINAI MEDICAL CENTER
OF FLORIDA, INC., d/b/a www.msmc.com

     Defendant.

---

**COMPLAINT**

---

     COMES NOW Plaintiff Andres Gomez, by and through his undersigned counsel, and hereby files this Complaint and sues Defendant Mount Sinai Medical Center of Florida, Inc. for injunctive relief, attorney's fees and costs (including, but not limited to, court costs and expert fees) pursuant to Title III of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§s 12181-12189 ("ADA"), Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504"), 28 C.F.R. Part 36 and alleges as follows:

**<u>INTRODUCTORY STATEMENT</u>**

     1.     Plaintiff Andres Gomez brings this action in Federal Court to stop the marginalization of blind, vision impaired, and low vision patrons of Defendant Mount Sinai Medical Center of Florida, Inc.'s website (which is an extension of its medical

center) throughout the United States of America, where the groundbreaking "American with Disabilities Act" has been the law of the land since 1992.

2.      Title III of the ADA has been judged to apply to websites. Specifically, the Honorable Bryan F. Foster held on March 3, 2016 that the ADA applied to websites where the plaintiff had demonstrated "he was denied full and equal enjoyment of the goods, services, privileges, and accommodations offered by defendant [via its website] because of his disability."[1]

3.      Businesses can make choices (unlike visually impaired individuals) and can either make their websites inclusive, or they can make them effective **Zones of Discrimination** and exclude the visually-impaired.

4.      When the operators of a business do not take steps necessary to notice people of their website's limitations or to provide programming that works (interfaces) with universal screens readers[2], they are not only marginalizing the visually impaired community, but they are actively excluding them from their business, which in fact segregates the disabled into being non-participants, ie: second-class citizens.

5.      This case arises out of the fact that Defendant Mount Sinai Medical Center of Florida, Inc. has operated its business in a manner and way that completely excludes individuals who are visually impaired from access to Defendant's business based upon barriers to access within Defendant's www.msmc.com (reference throughout as "Website").

---

[1] *Davis v. Bmi/Bnd Travelware,* 2016 Cal. Super. LEXIS 217 (2016).

[2] A "screen reader" is a software application that enables people with severe visual impairments to use a computer. Screen readers work closely with the computer's Operating System (OS) to provide information about icons, menus, dialogue boxes, files and folders.

6.      Defendant Mount Sinai Medical Center of Florida, Inc. (also referenced as "Defendant") owns and operates place(s) of public accommodation which include a hospital, emergency services, physical therapy centers, offices for various medical providers, diagnostic centers, and pharmacies (hereinafter referred to as "medical facilities," or "Defendant's business") under the name "Mount Sinai Medical Center".

7.      Defendant offers a website www.msmc.com ("Website") which is directly connected to its Mount Sinai Medical Center's various locations and medical facilities. The Website provides a site locator to Defendant's various offices, clinics, and hospital. Thus Defendant's Website has a true nexus to Defendant's business.

8.      This complaint seeks declaratory and injunctive relief to correct Defendant's policies and practices to include measures necessary to ensure compliance with federal law, to update and remove barriers and obstructions to effective communications on and with Defendant's Website so that Plaintiff (and other individuals who are visually impaired) can access and communicate with Defendant effectively and timely such that their access to Defendant's Mount Sinai Medical Center's various locations and medical facilities are not impeded; as such impediment had rendered Defendant's physical places of accommodation not fully accessible to the visually impaired.

## **JURISDICTION & VENUE**

9.      This is an action for declaratory and injunctive relief pursuant to Title III of the Americans With Disabilities Act, 42 U.S.C. §§12181-12189 ("ADA"), 28 U.S.C. § 1331, 28 C.F.R. § 36.201 and to prevent discrimination which includes equal access and effective communications with Defendant's business.

10.     Venue in this Court is proper pursuant to 28 U.S.C. §§ 1331 and 1343, because they arise under the ADA and Section 504.

11.     Venue in this Court is proper pursuant to 28 U.S.C. §1391(b) because the Defendant is conducting business within the within the jurisdiction of this court by virtue of the fact its website is available to the general public within this district and the acts constituting the violation of the ADA occurred in this District. Further, Defendant's hospital (Alton Road main campus), emergency center (Aventura), clinics, medical labs, doctors' offices, diagnostic centers, and pharmacies are located in the district. In addition, the Defendant is authorized to conduct business within the state of Florida as a domestic not-for-profit corporation.

12.     Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§s 2201 and 2202.

## THE PARTIES

### Andres Gomez

13.     Plaintiff Andres Gomez (also referenced as "Plaintiff") is a resident of the state of Florida and resides within the Southern judicial district, is *sui juris*, is disabled as defined by the ADA and Section 504 of the Rehabilitation Act.

14.     Plaintiff Andres Gomez is legally blind and a member of a protected class under the ADA, 42 U.S.C. § 12102(1)-(2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq.* and in 42 U.S.C. 3602, §802(h).   Andres Gomez is substantially limited in performing one or more major life activities, including (but not limited to) accurately visualizing his world and adequately traversing obstacles.

15.     Plaintiff Gomez cannot use the computer without the assistance of screen reader software.

4

**Mount Sinai Medical Center of Florida, Inc.**

16.     Defendant Mount Sinai Medical Center of Florida, Inc. (also referenced as Defendant) is a Florida non-profit corporation with its principal place of business in Miami-Dade County, State of Florida, and does business as "Mount Sinai Medical Center" as a full-service hospital located at 4300 Alton Road, Miami Beach, Miami-Dade County and as satellite medical centers located in Aventura (which includes an emergency center and cancer treatment center), Key Biscayne, Coral Gables, Hialeah, Sunny Isles, and the Florida Keys.

17.     Upon information and belief, at all times material hereto, Defendant (directly or through shell corporations), owns, operates, and/or manages the day-to-day affairs of Mount Sinai Medical Center.

18.     Further, Defendant is a recipient of federal Medicaid funds and is therefore subject to the requirements of Section 504 of the Rehabilitation Act.

19.     In order to receive Medicaid funding, Defendant is required to develop policies and procedures that ensure that persons who are blind or visually impaired will receive adequate and effective communication.

20.     Further, each time Defendant re-certifies for Medicaid funding, Defendant promises to provide and adhere to such policies.

## FACTS

21.     Plaintiff's disability limits major life activities and he requires assistive technologies, auxiliary aids, and services for effective communication.

22.     Plaintiff frequently utilizes the internet. Due to the fact that Plaintiff is legally blind, in order to effectively communicate and comprehend information available

on the internet and access/comprehend websites, Plaintiff uses commercially available screen reader software to interface with the various websites.

23.     At all times material hereto, Defendant Mount Sinai Medical Center of Florida, Inc. was (and is) an organization owning and operating a hospital (main campus on Alton Road), emergency services center (Aventura), a cancer center, clinics, medical labs, professional offices of health care providers, diagnostic centers, and on-site pharmacies under the name "Mount Sinai Medical Center ". Each of Defendant's medical facilities (hospital, emergency center, clinics and labs, medical providers' offices, and pharmacies) are open to the public as a provider of health / medical care.

24.     As the owner and operator of Mount Sinai Medical Center, Defendant is defined as a "Public Accommodation" within meaning of Title III because Defendant Mount Sinai Medical Center of Florida, Inc. is a private entity which owns and/or operates "[A] laundromat, dry-cleaner, bank, barber shop, beauty shop, travel service, shoe repair service, funeral parlor, gas station, office of an accountant or lawyer, **pharmacy, insurance office, professional office of a health care provider, hospital**, or other service establishment," 42 U.S.C. §12181(7)(F)  and 28 C.F.R. §36.104(2).

25.     By virtue of being a health care provider (hospital, emergency center, operator of clinics, medical labs, provider of medical providers' offices, and pharmacies) open to the public, each of Defendant's medical facilities are a place of public accommodation subject to the requirements of Title III of the ADA and its implementing regulation; 42 U.S.C. §12182, §12181(7)(F) and 28 C.F.R. Part 36, and are referenced throughout as "Place(s) of Public Accommodation," or "Mount Sinai Medical Center."

26.     The Defendant controls, maintains, and/or operates a website called www.msmc.com ("Website"). One of the functions of Defendant's Website is to provide the public information on the various locations of Defendant's Mount Sinai Medical Center medical facilities (hospital, emergency center, clinics, medical labs, medical providers' offices, and pharmacies) within the state of Florida.

27.     Since the Website allows the public the ability to locate Mount Sinai Medical Center medical facilities, the Website is an extension of the physical locations of the Mount Sinai Medical Center business (medical facilities).   By this nexus, the Website is characterized as a Place of Public Accommodation; 42 U.S.C. §12181(7)(F) and an extension of Defendant's business.

28.     Most importantly, Defendant's Website permits the public to ascertain which insurance providers (carriers) are accepted at Defendant's medical facilities, to access medical records on-line, to pay medical bills on-line, as well as to make inquiries about clinic and hospital admissions, inquire about financial assistance, and retrieve billing information. The Website also provides other information the Defendant seeks to communicate to the public.

29.     Due to the Website's ability to provide the public information on individual members of the public's medical records, appointment information, insurance carriers who accept the medical service providers at Defendant's medical facilities, and provides the ability to pay medical bills online and inquire about financial assistance and billing, the Website is itself an integral part of the provision of medical services, and therefore is a Place of Public Accommodation pursuant to 42 U.S.C. § 12181(7)(F). As

such, the Website must comply with all requirements of the ADA and Section 504 of the Rehabilitation Act.

30.     This means the Website must not discriminate against individuals with disabilities and may not deny full and equal enjoyment of the services afforded to the public.

31.     At all times material hereto, Defendant Mount Sinai Medical Center of Florida, Inc. was (and is) an organization owning and operating the Website. Since the Website is an integral part of the provision of medical services and is a Place of Public Accommodation, Defendant (as the owner and/or operator of the Website) is defined as a "Public Accommodation" within meaning of Title III, 42 U.S.C. §12181(7)(F) and 28 C.F.R. §36.104(2).  As such, Defendant has subjected itself and the Website it has created and maintains, to the ADA[3] and Section 504.

32.     Plaintiff Andres Gomez is in need of medical services such as offered by and through Mount Sinai Medical Center.

33.     During the month of December 2016, Plaintiff attempted on several occasions to utilize Defendant's Website to educate himself as to his insurance carrier's coverage of medical services provided by Mount Sinai Medical Center with the intention of making an appointment online through Defendant's Website which would make it possible for Plaintiff to could go to Defendant's medical facilities physical locations.

---

[3] "The Department of Justice has long taken the position that both State and local government Websites and the websites of private entities that are public accommodations are covered by the ADA. In other words, the websites of entities covered by both Title II and Title III of the statute are required by law to ensure that their sites are fully accessible to individuals with disabilities." ( See: Statement of Eve Hill Senior Counselor to the Assistant Attorney General for the Civil Rights Department of Justice  - Before the Senate Committee on Health, Education, Labor & Pensions United States Senate – Concerning The Promise of Accessible Technology: Challenges and Opportunities – Presented on February 7, 2012.

34.     The Plaintiff utilizes JAWS Screen Reader software (hereinafter referenced as "screen reader software"), which when utilized allows individuals who are visually impaired to communicate with internet website(s).

35.     The Website contains access barriers that prevent the Plaintiff and other visually impaired individuals using keyboards and screen reading software from free and full use of the Website.

36.     The Website also lacks prompting information and accommodations necessary to allow visually impaired individuals who use screen reader software to locate and accurately fill-out online forms to pay for medical services and to view/obtain copies of patient medical records.

37.     The Plaintiff attempted to locate an *Accessibility Notice*[4] which would direct him to a webpage with contact information for disabled individuals who have questions, concerns or who are having difficulties communicating with the Website and by extension, the Defendant. However, he was unable to so communicate because no such link or notice was provided.

38.     Due to his inability to access the Website in December 2016, Plaintiff called Defendant's to find out his medical insurance carrier was accepted at Defendant's medical facilities and to locate a medical provider within Defendant's medical facilities. When Plaintiff called Defendant, Defendant's representative failed to assist Plaintiff. Defendant's representative told the Plaintiff to research specific medical providers and

---

[4] **hyperlink**, or simply a link, is a reference to data that the reader can directly follow either by clicking, tapping, or hovering. A **hyperlink** points to a whole document or to a specific element within a document.

insurance carriers whom were accepted at the various medical facilities by looking on Defendant's Website.

39.     Plaintiff told Defendant's representative he could not access the Website due to his vision disability. Despite being told of Plaintiff's inability to comprehend the Website, Defendant's representative did not transfer Plaintiff to any person or department for assistance.

40.     The failure and refusal of Defendant's representative to assist the Plaintiff by passing off Plaintiff's inquiries to Defendant's Website (which is/was inaccessible due to Plaintiff's vision impairment) resulted in Plaintiff being impeded from accessing Defendant's physical medical facilities.

41.     The fact that Plaintiff could not communicate with Defendant left him excluded from accessing Defendant's physical locations, and left Plaintiff with the feeling of segregation, rejection, and isolation, as Plaintiff was unable to participate in the same manner as provided to the public.

42.     Plaintiff continues to desire to patronize Defendant, but is unable to do so, as he is unable to effectively communicate with the Defendant in order to obtain access to Defendant's physical locations in order to participate in the services offered at Defendant's medical facilities.   Plaintiff's inability to communicate with / comprehend Defendant's Website has impeded Plaintiff's ability to patronize Defendant's physical Places of Public Accommodation.   As such, the Plaintiff (and others with vision impairments) will suffer continuous and ongoing harm from the Defendant's omissions, policies, and practices set forth herein unless enjoined by this Court.

43.     On information and belief, Defendant has not initiated a Web Accessibility Policy to insure full and equal use of the Website by individuals with disabilities.

44.     On information and belief, Defendant has not instituted a Web Accessibility Committee to insure full and equal use of the Website by individuals with disabilities.

45.     On information and belief, Defendant has not designated an employee as a Web Accessibility Coordinator to insure full and equal use of the Website by individuals with disabilities.

46.     On information and belief, Defendant has not instituted a User Accessibility Testing Group to insure full and equal use of the Website by individuals with disabilities.

47.     On information and belief, Defendant has not instituted a Bug Fix Priority Policy.

48.     On information and belief, Defendant has not instituted an Automated Web Accessibility Testing program.

49.     On information and belief, Defendant has not created and instituted a Specialized Customer Assistance line, nor service or email contact mode for customer assistance for the visually impaired.

50.     On information and belief, Defendant has not created and instituted on the Website a page for individuals with disabilities, nor displayed a link and information hotline, nor created an information portal explaining when and how the Defendant will

have the www.msmc.com website, Applications, and Digital Assets accessible to the visually impaired community.

51.     On information and belief, the Website does not meet the Web Content Accessibility Guidelines ("WCAG") 2.0 Basic Level of web accessibility[5].

52.     On information and belief, Defendant does not have a Web Accessibility Policy.

53.     On information and belief, Defendant has not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of its Website to visually impaired individuals who want the safety and privacy of using Defendant's Website online from their homes.

54.     Thus, the Defendant has not provided full and equal enjoyment of the services, facilities, privileges, advantages and accommodations provided by and through the Website.

55.     Public Accommodations must insure that their *Places of Public Accommodation* provide **Effective Communication** for all members of the general public, including individuals with disabilities

56.     The broad mandate of the ADA to provide an equal opportunity for individuals with disabilities to participate in and benefit from all aspects of American civic and economic life. That mandate extends to internet shopping websites, such as the www.msmc.com website.[6]

---

[5] developed by the Web Accessibility Initiative (WAI) working group of the World Wide Web Consortium which defined how to make Web content more accessible to people with disabilities (W3C)

[6] Congress expressly stated when passing the ADA, "the types of accommodation and services provided to individuals with disabilities, under all of the titles of this bill, should keep pace with the rapidly changing

57.     On information and belief, the Defendant is aware of its barriers to effective communication within its Website which prevent individuals with disabilities who are visually impaired from the means to comprehend information presented therein.

58.     Such barriers result in discriminatory and unequal treatment of individuals with disabilities who are visually impaired.

59.     Such barriers result in punishment and isolation of blind and low vision from the rest of society.

60.     The discrimination against Plaintiff (and other blind and low vision individuals) due to Defendant's inaccessible Website was intentional, with reckless disregard, and with deliberate indifference to Plaintiff's protected rights.

61.     According to the National Federation for the Blind[7], there are over seven million Americans with visual disabilities, and there are over half a million people with visual disabilities living within the state of Florida.

62.     Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged hereinabove and this suit for declaratory judgment and injunctive relief is his only means to secure adequate redress from Defendant's unlawful and discriminatory practices.

63.     Notice to Defendant is not required as a result of Defendant's failure to cure the violations. Enforcement of Plaintiff's rights is right and just pursuant to 28 U.S.C. §§ 2201, 2202.

---

technology of the times" and technological advances "may require public accommodations to provide auxiliary aids and services in the future which today would not be required.

[7] Statistics for 2012, see http://www.NFB.org/blindness-statistics

64.     Plaintiff has retained the civil rights law office of Scott R Dinin, P.A. and has agreed to pay a reasonable fee for services in the prosecution of this cause, including costs and expenses incurred.

## COUNT I – VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT

65.     Plaintiff Andres Gomez re-alleges and incorporates by reference the allegations set forth in ¶¶s 1-64 above.

66.     The Department of Justice ("Department") has long taken the position that both State and local government websites and the websites of private entities that are public accommodations are covered by the ADA. In other words, the websites of entities covered by both Title II and Title III of the statute are required by law to ensure that their sites are fully accessible to individuals with disabilities[8].

### Requirement for Effective Communication

67.     It is irrefutable that the ADA and implementation of ADAAG requires that Public Accommodations (and Places of Public Accommodation) are required to ensure that communication is effective.

68.     According to 28 C.F.R. §36.303(b)(1), auxiliary aids and services includes "voice, text, and video-based telecommunications products and systems". 28 C.F.R. §36.303(b)(2) specifically states that screen reader software is an effective method of

---

[8] See: Statement of Eve Hill Senior Counselor to the Assistant Attorney General for the Civil Rights Department of Justice  - Before the Senate Committee on Health, Education, Labor & Pensions United States Senate – Concerning The Promise of Accessible Technology: Challenges and Opportunities – Presented on February 7, 2012.

making visually delivered material available to individuals who are blind or have low vision.

69.     Section 28 C.F.R. §36.303(c) specifically states that public accommodations must furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities. "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability," 28 C.F.R. §36.303(c)(1)(ii).

70.     Part 36 of Title 28 of the C.F.R. was designed and is implemented to effectuate subtitle A of Title III of the ADA, which prohibits discrimination on the basis of disability by public accommodations and requires places of public accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36.

71.     Defendant's Website has not been designed to interface with the widely and readily available technologies that can be used to ensure effective communication.

72.     The Department has consistently told courts, members of Congress, and businesses that Title III applies to websites and services provided over the Internet. Addressing the 106th Congress, the Department stated: "It is the opinion of the Department of Justice currently that the accessibility requirements of the Americans with Disabilities Act already apply to private Internet Web sites and services[9]." The Department believes that Title III reaches the Websites of entities that provide goods or

---

[9] 106th Congress, 2d Sess. 65-010 (2000)

services that fall within the 12 categories of 'public accommodations,' as defined by the statute and regulations; 75 Fed. Reg. 43460-01 (July 6, 2010).

73.     In rendering its opinion in *Scribd,* the court referenced the Department's opinion and stated: "Covered entities under the ADA are required to provide effective communication, regardless of whether they generally communicate through print media, audio media, or computerized media such as the Internet[10]" *Scribd,* 97 F. Supp. 3d at 574.

**Defendant's Business is A Place of Public Accommodation**

74.     By virtue of Defendant's medical facilities being a health care provider (hospital, emergency center, operator of clinics, medical labs, provider of medical providers' offices, and pharmacies) open to the public, each of Defendant's medical facilities are a place of public accommodation subject to the requirements of Title III of the ADA as a pharmacy, insurance office, professional office of a health care provider, hospital; 42 U.S.C. §12181(7)(F).

75.     As Defendant's medical facilities are each a Place of Public Accommodation, the ADA prohibits any and all barriers which would limit access by the visually impaired.

76.     When the visually impaired are prohibited from obtaining information to determine if their medical insurance carriers are accepted, and prohibited from learning about and choosing a medical care provider at that that medical facility, those visually impaired individuals have been barred from accessing that medical care provider.

77.     The virtual barrier to access is just as real as a physical barrier to access, for without  information as to acceptability of insurance, and ability to investigate and

---

[10] citing Letter from Deval L. Patrick, Assistant Att'y Gen., to Senator Tom Harkin (Sept. 9, 1996)

choose a medical provider, the visually impaired have no access to the goods and services of that medical facility, which is both a Public Accommodation and a Place of Public Accommodation.

**The Website As A Place of Public Accommodation**

78.     The Court has held that, when services available on an internet website have a connection to a physical Place of Public Accommodation, that website falls within the ADA's *Place of Public Accommodation* requirement; *Peoples v Discover Financial Services, Inc.*, 2009 WL 3030217, 2 (E.D. Pa. 2009).

79.     Consistent with the text and legislative history of the ADA, the Department of Justice (Department) has long affirmed the application of Title III of the ADA to websites of public accommodations[11]. The Department is engaged in rulemaking to consider whether specific requirements or technical standards for website accessibility should be developed, but this does not undermine or change public accommodations' longstanding existing obligation to ensure equal access to their goods and services, including those offered via a website, for individuals with disabilities[12]; see Statement of

---

[11] *See generally* Statement of Interest of the United States, *Nat'l Assoc. of the Deaf v. Netflix, Inc.*, 869 F. Supp. 2d 196 (D. Mass. 2012) (No. 3:11-cv-30168), available at www.ada.gov/briefs/netflix_SOI.pdf (discussing the Department's history of public pronouncements on the topic); *see also* Consent Decree, *Nat'l Fed. of the Blind and United States v. HRB Digital LLC and HRB Tax Group, Inc.*, No. 1:13-cv-10799-GAO (entered March 25, 2014), available at www.ada.gov/hrb-cd.htm (comprehensive decree governing the accessibility of H&R Block's website); *Settlement Agreement Between United States and Ahold U.S.A. Inc. and Peapod LLC* (11/17/14), available at https://www.ada.gov/peapod_sa.htm (agreement addressing accessibility of online grocery service).

[12] Pursuant to its statutory authority to promulgate regulations to implement Title III of the ADA, on July 26, 2010, the Department issued an Advanced Notice of Proposed Rulemaking ("ANPRM") on Accessibility of Web Information and Services of State and

Interest filed by the Department in *Juan Carlos Gill v Winn Dixie Stores, Inc.* No. 16-cv-23020 [DE #23].

80.     Pursuant to 42 U.S.C. §12181(7)(F), Defendant is a *Public Accommodation* under the ADA because it owns and/or operates the www.msmc.com website, as defined within §12181(7)(F), and is subject to the ADA.

81.     Additionally, www.msmc.com is a *Place of Public Accommodation* under pursuant to 42 U.S.C. §12181(7)(F). Further, the Website also is an integral part of Defendant's Mount Sinai Medical Center medical facilities (hospitals, clinics, medical offices, clinics and pharmacies, etc.) by providing the public information on the various locations of Mount Sinai Medical Center's medical facilities and offers the public the ability to determine if individuals' health insurance carriers accept the medical providers at Defendant's facilities, to access their medical records on-line, to pay their medical bills on-line, and to inquire about clinic and hospital admissions, financial assistance and billing information.

82.     In addition, Defendant's representatives within its physical places of business (hospitals, clinics, medical offices, clinics and pharmacies) refer customers to Defendant's Website for additional information as the Website provides regarding

---

Local Government Entities and Public Accommodations, announcing the Department's interest in developing more specific requirements or technical standards for website accessibility. 75 Fed. Reg. 43,460 (July 26, 2010). In the ANPRM, the Department reaffirmed its longstanding position that the ADA applies to websites of public accommodations, and reiterated, consistent with the preamble to the 1991 regulations, that the ADA regulations should be interpreted to keep pace with developing technologies. *Id.* at 43,464 ("The Department has also repeatedly affirmed the application of Title III to Web sites of public accommodations."). The Department recognized, however, that in light of inconsistent court decisions on website-related obligations and differing technical standards for determining web accessibility, further guidance was warranted. *Id.* The development of the Department's web regulation is ongoing.

information on which health insurance carriers accept the medical providers at Defendant's facilities, accessing medical records on-line, paying medical bills on-line, and inquiring about clinic and hospital admissions, financial assistance and billing information which are an integral part of the public's needs with respect to Defendant's business.

83.    By Defendant's representatives referring the public (including visually impaired individuals) to its Website, the Website has been rendered an integral part of Defendant's physical business locations. Thus, the failure of that Website to be accessible to visually impaired individuals impedes visually impaired individuals (such as the Plaintiff) from fully accessing the Defendant's physical business locations.

84.    It is clear that the ADA applies to the Defendant's Website, as the Website **is** a *Place of Public Accommodation* for the following reasons: (1) the statutory construction of the ADA demonstrates its applicability is not limited to physical "brick and mortar" locations; (2) Congress' intent was for the ADA to be responsive to changes in technology; and (3) the Department of Justice has interpreted the ADA to apply to websites.

85.    While the Eleventh Circuit has not yet ruled on whether a website is a Place of Public Accommodation under the ADA, case law in other districts have provided favorable rulings. For example, in *Nat'l Ass'n of the Deaf v. Netflix, Inc.,* 869 F. Supp. 2d 196, 199 (D. Mass. 2012)[13].

---

[13] the plaintiff sued Netflix, Inc., ("Netflix") under Title III of the ADA based on Netflix's failure to provide equal access to its video streaming website "Watch Instantly" for deaf and hearing impaired individuals. There, the plaintiff alleged the website itself was a place of public accommodation because the website qualifies as a "place of exhibition and entertainment," "place of recreation," "sales or rental establishment," and "service establishment" as enumerated by the ADA. *Id.* at 200.

86.     In *Nat'l Fedn. of the Blind v. Scribd Inc*., 97 F. Supp. 3d 565, 567 (D. Vt. 2015)[14] the court rejected the Scribd argument (that Congress's use of the phrase "***place*** of public accommodation" and the doctrine of *ejusdem generis* show that a public accommodation is defined exclusively as a physical space) *Id.* at 572. In so finding, the court noted that 42 U.S.C. § 12181(7) is entitled, "Public Accommodation" and not "Places of Public Accommodation," and refers to private entities as "public accommodations" and not "places of public accommodation." *Id.* (emphasis added).

87.     As such, the ADA's failure to refer to public accommodations as "places" of public accommodation in the above referenced instances suggested to the court that accommodations protected by the statute "must be available to the public, ***but not necessarily at a physical place open to the public***." *Id.*

88.     The ADA's legislative history makes it clear that Congress intended the ADA to adapt to changes in technology, such as the technology afforded through websites, the internet and e-commerce. Congress has stated that "the types of accommodation and services provided to individuals with disabilities . . . ***should keep pace with the rapidly changing technology of the times.***" *Netflix,* 869 F. Supp. 2d at 200 (citing H.R. Rep. 101-485(II), at 108 (1990)); *Scribd,* 97 F. Supp. 3d at 574 (same) (emphasis added). For example, Congress identified "information exchange" (the principal function of a website) as an important area of concern where expanding technology would be subject to the ADA. *Scribd,* 97 F. Supp. 3d at 574 (citing H.R. Rep. 101-485(II), at 108 (1990)).

---

[14] wherein the plaintiff filed a complaint alleging a violation of the ADA against Scribd, Inc., ("Scribd"), in that it provided a digital library operating reading subscription services on its websites and mobile app which were incompatible with reader software and denied blind persons' access to Scribd's services

89.     Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

90.     Specifically, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

91.     In addition, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(III), unlawful discrimination also includes, among other things, "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

**Barriers to Access**

92.     As a result of the inaccessibility of Defendant's physical places of business precipitated by barriers within its Website, visually impaired individuals are denied full and equal access to Defendant's physical locations as Defendant has made

available to the public through the information provided on its Website, in derogation of 42 U.S.C. §12101 et. seq., and as prohibited by 42 U.S.C. §12182 et. seq.

93.    Types of website programming errors include (but are not limited to) *Programming Error Types* ("PETs"), which are easily identifiable and correctable, and *Programing Alert Error Types* ("PATs"), which are prone to making the website inaccessible.

94.    A sampling review of just part *of the* Defendant's Website revealed that the Website is not functional for users who are visually impaired.  The Website contains several types of PETs (easily identifiable and correctable), which occur throughout the Website such as:

1) The language of the document is not identified,
2) Image alternative text is not present, and
3) A form control does not have a corresponding label.

95.    Further, the Defendant's Website contains various types of PATs (prone to making the website inaccessible), which occur throughout the Website, such as:

1) Alternative text is likely insufficient or contains extraneous information,
2) An event handler is present that may not be accessible,
3) A heading level is skipped,
4) Flash content is present,
5) Adjacent links go to the same URL,
6) A link contains no text, and
7) Alternative text is likely insufficient or contains extraneous information.

96.    More violations may be present on other pages of the Website, and they will be determined and proven through the discovery process.

97.     Further, the Website does not offer include the universal symbol for the disabled[15] which would permit disabled individuals to access the Website's accessibility information and accessibility facts.

98.     There are readily available, well established guidelines on the Internet for making websites accessible to the blind and visually impaired. These guidelines have been followed by other large business entities in making their websites accessible. Examples of such guidelines include (but not limited to) adding alt-text to graphics and ensuring that all functions can be performed using a keyboard. Incorporating the basic components to make the Website accessible would neither fundamentally alter the nature of Defendant's business nor would it result in an undue burden to the Defendant.

99.     The Defendant has violated the ADA (and continues to violate the ADA) by denying access to its Website to individuals with disabilities who are visually impaired and who require the assistance of interface with screen reader software to comprehend and access internet websites. These violations within Defendant's www.msmc.com website are ongoing.

**Violations of the ADA**

100.    As a result of the inadequate development and administration of the www.msmc.com website, Plaintiff Andres Gomez is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303 to remedy the discrimination.

101.    Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff Andres Gomez injunctive relief; including an order to:

---

[15]  , or HTML "Accessibility" link for those individuals who are visually impaired

a) Require Defendant to adopt and implement a web accessibility policy to make publically available and directly link from the homepage of the www.msmc.com website to a statement as to the Defendant's policy to ensure persons with disabilities have full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations through its Website.

b) Require Defendant to take the necessary steps to make the Website readily accessible to and usable by visually impaired users, and during that time period prior to the www.msmc.com website's being readily accessible, to provide an alternative method for individuals with visual impairments to access the information available on the Website until such time that the requisite modifications are made, and

c) Require Defendant to provide the appropriate auxiliary aids such that individuals with visual impairments will be able to effectively communicate with the Website for purposes of the public viewing and locating Defendant's physical locations, obtaining information on which health insurance carriers accept the medical providers at Defendant's medical facilities, accessing medical records on-line, paying medical bills on-line, and inquiring about clinic and hospital admissions, financial assistance and billing information online. During that time period prior to the Website's being designed to permit individuals with visual impairments to effectively communicate, requiring Defendant to provide an alternative method for individuals with visual impairments to effectively communicate with Defendant through Defendant's Website and through Defendant's physical locations.

102.     Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action.  Plaintiff is entitled to have reasonable attorneys' fees, costs and expenses paid by the Defendant.

## COUNT II – VIOLATION OF SECTION 504 OF THE REHABILITATION ACT

103.     Plaintiff Andres Gomez re-alleges and incorporates by reference the allegations set forth in ¶¶s 1-102 herein above.

104.     Plaintiff is legally blind, which substantially limit him in his major life activities, including his ability to effectively communicate in the sighted world. Therefore, Plaintiff is a qualified individual with a disability under Section 504.

105.     Defendant is a recipient of federal financial assistance by virtue of receipt of Medicaid payments, as well as other federal financial assistance.

106.     Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, requires that no qualified individual with a disability, on the basis of that disability, be excluded from participation in or be denied the benefit of the services, programs, activities, or to otherwise be discriminated against.

107.     Defendant was aware that its Website does not interface with screen reader software used by the Visually Impaired.

108.     By virtue of the fact that Defendant operates a diverse medical facility, Defendant knew or should have known that blind and visually impaired individuals are very likely to utilize medical services Defendant provides through Defendant's medical facility locations (its hospital, emergency center, clinics, labs, medical providers' offices, and pharmacies). Yet, Defendant's Website is not equipped to provide interface for blind and visually impaired individuals by being programed to interface with screen reader

software. Thus, Defendant has failed to provide Plaintiff (and other blind and visually impaired individuals) *any* appropriate and effective auxiliary aids and services for use with its Website.

109.    Because of the failure to provide effective communication, Plaintiff (and other blind and visually impaired individuals) has/have an incomplete understanding of the medical services provided, billing, financing, and appointments at Defendant's places of business.

110.    The failure is so egregious that individuals who are visually impaired are (among other things) unable to: i) ascertain what medical insurance carriers are accepted at Defendant's medical facilities, ii) review medical providers and medical services offered by Defendant, iii) make appointments, review medical records and review and pay for medical services.  Such failure has impeded individuals who are visually impaired from independently accessing (access to) Defendants medical facilities.

111.    Accordingly, Defendant has discriminated against Plaintiff (and other blind and visually impaired individuals) in the equal use of its facilities and as a result, Plaintiff has experienced exclusion, segregation, mental anguish, and humiliation in violation of his civil rights.

112.    As such, Defendant has failed to provide services to Plaintiff (and other blind and visually impaired individuals) as Defendant would have provided a similarly situated sighted patient.

113.    Defendant's policies, practices and procedures, particularly the actions and omissions described above, violated Plaintiff's rights under Section 504 by discriminating on the basis of a disability.

114.    Defendant has discriminated against Plaintiff (and other blind and visually impaired individuals) by failing to provide auxiliary aids and services necessary to ensure effective communication with individuals who are blind or visually impaired, in violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

115.    Defendant's actions were intentional, with reckless disregard, and with deliberate indifference to the rights and needs of Plaintiff (and other blind and visually impaired individuals).

116.    As a result of Defendant's actions, Plaintiff has been damaged and has suffered injuries and experienced emotional suffering, pain and anguish.

117.    Plaintiff will continue to face discrimination, as Defendant's medical facilities are located in close proximity to Plaintiff, and Plaintiff continues to desire to utilize medical services available at Defendant's facilities.

118.    For all of the foregoing, the Plaintiff has no adequate remedy at law.

## <u>DEMAND FOR RELIEF</u>

**WHEREFORE,** Plaintiff Andres Gomez hereby demands judgment against Defendant Mount Sinai Medical Center of Florida, Inc. and requests the following injunctive and declaratory relief:

a) The Court issue a declaratory judgment that Defendant has violated the Plaintiff's rights as guaranteed by the ADA and Section 504 of the Rehabilitation Act;

b) The Court enter an Order requiring Defendant to update its www.msmc.com website to remove barriers in order that individuals with visual disabilities can access the Website and effectively communicate

27

with the Website to the full extent required by Title III of the ADA and Section 504 of the Rehabilitation Act;

c) The Court enter an Order requiring Defendant to clearly display the universal disabled logo[16] within its Website, wherein the logo would lead to a page which would state Defendant's accessibility information, facts, policies, and accommodations.  Such a clear display of the disabled logo is to insure that individuals who are disabled are aware of the availability of the accessible features of the www.msmc.com website;

d) The Court enter an Order compelling Defendant to contract with an independent ADA expert/consultant for the purposes of that ADA expert/consultant review Defendant's policies, practices and procedures for five years commencing from the date of the Court's Order to insure that Defendant is in compliance with the ADA and Section 504;

e) The Court enter an Order requiring Defendant to provide ongoing support for web accessibility by implementing a website accessibility coordinator, a website application accessibility policy, and providing for website accessibility feedback to insure compliance thereto.

f) The Court enter an Order directing Defendant to create policies, practices and procedures toward persons with visual disabilities, for such reasonable time so as to allow Defendant to undertake and complete corrective procedures to its Website;

---



16

g) The Court enter an Order directing Defendant to establish a policy of web accessibility and accessibility features for its Website to insure effective communication for individuals who are visually impaired;

h) The Court award damages in an amount to be determined at trial;

i) The Court to award Plaintiff reasonable litigation expenses and attorneys' fees; and

j) That the Court award such other and further relief as it deems necessary, just and proper.

Dated this 23rd day of February, 2017.

Respectfully submitted,

_s/Scott Dinin_
Scott R. Dinin, Esq.
Scott R. Dinin, P.A.
4200 NW 7th Avenue
Miami, Florida 33127
Tel: (786) 431-1333
inbox@dininlaw.com
_Counsel for Plaintiff_